UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAMILY FIRST FUNDING LLC,

Plaintiff,

v.

SPROUT MORTGAGE ASSET TRUST,

Defendants.

Civil Action No. 1:22cv4406

COMPLAINT & JURY DEMAND

Plaintiff Family First Funding LLC ("FFF"), by and through its attorneys, Offit Kurman, PA, brings this Complaint against Defendant Sprout Mortgage Asset Trust ("Sprout"), for breach of contract and promissory estoppel.  In support of its Complaint, Plaintiff FFF avers as follows:

NATURE OF THE ACTION

1.      This action arises out of Defendant Sprout's breach of a written agreement and other subsidiary agreements with Plaintiff FFF, in connection with Defendant Sprout's default in purchasing certain loans from Plaintiff FFF.

2.      Plaintiff FFF and Sprout are parties to a Flow Mortgage Loan Purchase and Sale Agreement, dated June 8, 2016 (the "MLPA").

3.      Pursuant to the MLPA, Plaintiff FFF offered to sell Defendant Sprout certain loans (to be memorialized by promissory notes and secured by mortgages) that FFF contemplated funding with prospective borrowers.

4.      Subject to the loans meeting certain specific conditions, all of which pertained to the loans themselves, the parties agreed upon prices for Plaintiff FFF's sale and Defendant Sprout's purchase of certain loans upon Plaintiff FFF funding and closing upon such loans with borrowers.

5.      Upon the parties reaching agreement as to the terms of the sale and purchase of a loan, Defendant Sprout continued its previously commenced due diligence of such loans.

6.      Despite the loans having satisfied all agreed upon conditions, Defendant Sprout has failed and refused to complete the purchase of the loans it had agreed to purchase.

7.      In one instance, Defendant has purported to take possession and control of a loan, but has failed and refused to pay the agreed-upon purchase price for the loan.

## THE PARTIES, JURISDICTION AND VENUE

8.      Plaintiff FFF is a limited liability company organized pursuant to the laws of the State of New Jersey, with its principal place of business located at 44 Washington St Suite 200, Toms River, NJ 08753.

9.      Plaintiff FFF's members and the citizenship of those members is, as follows: (a) Gabriel Gillen, a citizen of New Jersey; (b) Neusa Gillen, a citizen of New Jersey; and (c) Scott Weikel, a citizen of New Jersey.  Accordingly, Plaintiff FFF is a only citizen of the State of New Jersey.

10.      Defendant Sprout Mortgage Asset Trust is a Delaware statutory trust, organized pursuant to Del. Code Ann. tit. 12, Section 3804(a), with its principal place of business located at 90 Merrick Avenue, East Meadow, NY 11554 and neither it nor its members is a citizen of the State of New Jersey.

11.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the Complaint seeks legal remedies in excess of $75,000 and there is a complete diversity of citizenship between the Plaintiff FFF and Defendant Sprout.

12.      This Court has personal jurisdiction over Defendant Sprout because it consented to this Court's jurisdiction at Section 17 of the MLPA.  The Court also has personal jurisdiction

over Defendant Sprout because it committed one or more actionable acts in New York.

13.    Moreover, venue is proper as Plaintiff FFF and Defendant Sprout consented and waived any objection to venue in the Southern District of New York at Section 17 of the MLPA.

14.    Pursuant to Section 17 of the MLPA, New York law applies without regard to the conflicts of law principles of New York law.

**FACTUAL BACKGROUND**

*The Policy and Practice of the Parties*

15.    This case involves the non-qualified mortgage ("non-QM") lending business.

16.    Plaintiff FFF is a non-QM lender.

17.    As part of its business, Plaintiff FFF "generates" loans by soliciting and securing borrowers and funding and closing on loans to those borrowers.

18.    Like many other non-QM lenders, in order to source the funds necessary to fund and close the loans it "generates" with borrowers, Plaintiff FFF relies upon several different "warehouse" loans or lines of credit.

19.    Because it relies upon financing to fund and close the loans it "generates," as is the practice among non-QM lenders -- Plaintiff FFF does not typically hold such loans for more than two-weeks.

20.    Plaintiff FFF relies upon a number of "investor" groups to purchase the loans it funds and closes.

21.    Defendant Sprout is one such "investor" group that, in the past, regularly purchased loans that Plaintiff FFF funded and closed.

22.    In connection with Plaintiff FFF's regular practice of selling and Defendant Sprout's regular practice of purchasing loans funded and closed by Plaintiff FFF – Plaintiff FFF

and Defendant Sprout entered into the MLPA, dated June 8, 2016.

23.     The MLPA sets forth the overarching methodology for Plaintiff FFF's sale and Defendant Sprout's purchase of loans funded and closed by Plaintiff FFF.

24.     The MLPA sets forth, among other things, certain terms, representations, and obligations of the parties in connection with Plaintiff FFF's sale and Defendant Sprout's purchase of loans from Plaintiff FFF.

25.     However, the MLPA does not address a number of items with respect to Plaintiff FFF's actual sale and Defendant Sprout's purchase of loans.

26.     Specifically, the MLPA does not address the price at which Plaintiff FFF will sell and Defendant FFF will purchase loans funded and closed by Plaintiff FFF.

27.     Additionally, the MLPA does not govern when Defendant Sprout's actions or conduct constitutes acceptance of Plaintiff FFF's offer to sell certain loans and become a binding and enforceable agreement as to the sale and purchase of such loans.

28.     It was the policy and practice of the parties that Plaintiff FFF made certain potential loans that Plaintiff FFF considered funding, but upon which it had not yet closed, available for purchase by Defendant Sprout.

29.     As to any loan Defendant Sprout was interested in purchasing, the parties would agree upon a price and an interest rate (which Plaintiff FFF would, in reliance thereon, "lock" with its borrower) and Defendant Sprout's purchase of such loan, subject to certain specific conditions, and further subject to certain post-closing adjustments for interest and other items.

30.     Upon such agreement, Defendant Sprout would issue a "Conditional Approval" of any of loan it had agreed to purchase.

31.     Upon agreeing upon a price and interest rate, and issuing a "Conditional

Approval" Defendant Sprout would continue its previously commenced due diligence of any of any loan it agreed to purchase.

32.     It was always the policy and practice of Plaintiff FFF and Defendant Sprout that, as to any loan Defendant Sprout had agreed to purchase, Plaintiff FFF would not fund or close on such a loan with a borrower unless and until it first received from Defendant Sprout confirmation that the loan was "Cleared to Close."

33.     Plaintiff FFF further typically also received a "Final Conditional Approval" from Defendant Sprout before funding and closing upon a loan Defendant Sprout had agreed to purchase.

34.     Then, after funding and closing upon a loan Defendant Sprout agreed to purchase, Plaintiff would furnish Defendant Sprout a loan package including the credit and closing documents, and would further furnish Defendant Sprout's mortgage custodian with a "collateral package" specified by Defendant Sprout.

35.     Upon clearance and approval of the loan package and the "collateral package," Defendant Sprout would provide the final clearance for Plaintiff FFF's sale and Defendant Sprout's purchase of a loan it agreed to acquire by confirming that the loan was "Cleared for Purchase."

36.     Defendant Sprout's confirmation that a loan was "Cleared for Purchase" meant that all conditions to Defendant Sprout's acquisition of the loan were satisfied, and that nothing other than ministerial acts awaited the closing on Plaintiff FFF's sale and Defendant Sprout's purchase of the loan.

*The $5,143,205.00 in Loans Upon Which Defendant Sprout Defaulted*

37.     From on or about January 14, 2022 through on or about March 22, 2022, Plaintiff FFF offered to sell and for Defendant Sprout to purchase seven (7) separate loans (the "Loans") which Plaintiff FFF considered funding, but upon which it had not yet closed.  (*See* Exhibit A).

38.     The Loans ranged in the principal amount of $144,000 to $2,700,000 and have a total principal value of $5,143,205.00.

39.     With respect to each of the Loans, Defendant Sprout accepted Plaintiff FFF's offer and the parties agreed upon a price and an interest rate (which Plaintiff, in reliance thereon, "locked" with its relevant borrower) and specific conditions to Plaintiff FFF's sale and Defendant Sprout's purchase of each of the Loans.

40.     Upon agreeing to purchase each of the Loans, Plaintiff FFF furnished Defendant Sprout with information and Defendant Sprout continued its due diligence as to each of the Loans.

41.     For each of the Loans, upon agreeing upon a price – Defendant issued a "Conditional Approval" containing the specific conditions to purchase, and later confirmed each of the Loans was "Cleared to Close."

42.     This was  followed by Defendant Sprout issuing a "Final Conditional Approval" for each of the Loans.

43.     Ultimately, between March 19, 2022 and April 15, 2022, Defendant Sprout confirmed that all of the Loans were "Cleared for Purchase."

44.     Thus, Defendant Sprout does not dispute that all agreed upon conditions as to each of the Loans it agreed to purchase at a specified price were satisfied -- thereby binding Defendant Sprout to its agreement to purchase the Loans.

45.     Moreover, to the extent there were any conditions other than those in Defendant Sprout's "Conditional Approval" or "Final Conditional Approval" to Defendant Sprout completing its purchase of the Loans, they were all – either formally or in sum and substance – satisfied or waived by Defendant Sprout.

46.     Indeed, Defendant Sprout never previously confirmed that a loan was "Cleared for Purchase" without then following through with the actual purchase and closing on the transfer of such loan.

47.     Nevertheless, despite repeated written demands – all of which have been ignored – Defendant Sprout has failed and refused to abide by its agreement to complete the purchase of any of the Loans.

## COUNT I – BREACH OF CONTRACT

48.     Paragraphs 1 through 47 are incorporated by reference as if fully set forth herein.

49.     Defendant Sprout's acceptance of Plaintiff FFF's offer to sell and Defendant Sprout to purchase each of the Loans at an agreed upon price, subject to specific conditions formed a binding and enforceable agreement.

50.     The binding and enforceable nature of Defendant Sprout's agreement to purchase the Loans is reflected by the "Conditional Approval," "Cleared to Close" and "Final Conditional Approval" it gave Plaintiff FFF for each of the Loans.

51.     Defendant Sprout's "Cleared for Purchase" issued for each of the Loans confirms that all of the specified conditions to closing were met, and that all conditions to its purchase of the Loans were satisfied.

52.     As a result of Defendant Sprout's breaches, Plaintiff FFF has suffered real damages, including, but not limited to, the difference between the agreed upon price for Plaintiff FFF's sale and Defendant Sprout's purchase of the Loans and the price at which Plaintiff was

forced to sell the Loans to a third-party in order to mitigate its damages, together with all other costs and expenses of carrying the Loans before Plaintiff FFF successfully sold them to a third-party, estimated to be in excess of $200,000.

### COUNT II – PROMISSORY ESTOPPEL

53.     Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

54.     Defendant Sprout's issuance of a "Conditional Approval," "Cleared to Close," and "Final Conditional Approval" for each of the Loans constituted unambiguous promises that, subject to the Loans satisfying specific agreed upon conditions, it would complete the purchase of the Loans.

55.     Plaintiff FFF relied upon such promises in locking an interest rate with each of its borrowers and both funding and closing upon the Loans and removing them from the market available for purchase by others.

56.     Defendant Sprout's issuance of a "Cleared for Purchase" for each of the Loans constituted an unambiguous and unconditional promise to purchase the Loans.

57.     Plaintiff relied upon such promises in removing the Loans from the market available for purchase by others.

58.     Plaintiff FFF's reliance upon Defendant Sprout's promises was both reasonable and foreseeable.

59.     As a result of Defendant Sprout's actions, Plaintiff FFF has suffered real damages, including, but not limited to, the difference between the agreed upon price for Plaintiff FFF'S sale and Defendant Sprout's purchase of the Loans and the price at which Plaintiff was forced to sell the Loans to a third-party in order to mitigate its damages, together with all other costs and expenses of carrying the Loans before Plaintiff FFF successfully sold them to a third-party,

estimated to be in excess of $200,000.

## COUNT III – BREACH OF CONTRACT

60.    Paragraphs 1 through 59 are incorporated by reference as if fully set forth herein.

61.    In addition to the Loans, Defendant Sprout agreed to purchase a loan in the principal amount of $215,000, which Plaintiff FFF funded and closed (referred to by Sprout as Loan 2110074355 and defined here as the "Stephens Loan").

62.    As with the Loans, Defendant issued a "Conditional Approval," "Cleared to Close," "Final Conditional Approval" and "Cleared for Purchase" with respect to the Stephens Loan.

63.    By purchase advice, dated February 1, 2022, Defendant Sprout confirmed the closing on Plaintiff FFF's sale and its purchase of the Stephens Loan.

64.    Despite FFF's execution of documents necessary to transfer the Stephens Loan pursuant to established customs and practices and agreed upon terms by and between Plaintiff FFF and Defendant Sprout – Defendant Sprout has, without explanation, failed and refused to make the agreed-upon payment to FFF (the "Purchase Price," which was $219,050.67 as of January 31, 2022 and was $226,654.22 as of May 23, 2022) for the Stephens Loan.

65.    On or about February 2, 2022, Defendant Sprout issued payment of the Purchase Price to an account at Hinsdale Bank – where Plaintiff FFF maintains a loan facility.

66.    On or about February 6, 2022, Plaintiff FFF notified Sprout in writing that Defendant Sprout improperly directed payment of the Purchase Price to Hinsdale Bank, as bailee, and should have directed payment to an account at First Horizon – where Plaintiff FFF maintains yet another account.

67.    By purchase advice that same date (February 6, 2022), Defendant Sprout again

confirmed the closing for the purchase of the Stephens Loan (with an updated price and revised recipient bank information).

68.    On or about February 22, 2022, the monies representing the Purchase Price that Defendant Sprout had wired to Hinsdale Bank, were returned by Hinsdale Bank (Fed Reference #20220222MMQFMP14001569) to Defendant Sprout's account at Wells Fargo Bank.

69.    Despite repeated demands by Plaintiff FFF and multiple written representations that it would remit the Purchase Price for the Stephens Loan, those funds have never since been properly re-directed to Plaintiff FFF or its agent First Horizon.

70.    Defendant Sprout does not and has not ever disputed its obligation to remit payment of the Purchase Price for the Stephens Loan.

71.    Section 1 of the MLPA states, in pertinent part:

The Seller [FFF], in exchange for the payment of the applicable Purchase Price by the Purchaser [Sprout] on the related Closing Date, receipt of which is hereby acknowledged, hereby sells, transfers, assigns, sets over and conveys to the Purchaser, without recourse, but subject to the terms of this Agreement, all of its rights, title and interest in and to the Mortgage Loans . . . .

72.    Moreover, Section 7.01, entitled "Closing Conditions," states in pertinent part at subjection (g):

*[T]he Purchaser shall remit to the Seller . . . the Purchase Price* . . . .  Such remittance shall be made by the Purchaser on the Closing Date by wire transmission of same day funds.  *Upon the Purchaser's transmission of such wire* all right and title to the Mortgage Loans that constitute the Mortgage Loan Package shall transfer to the Purchaser including any and all related Mortgage Servicing Rights.

73.    The clear and unmistakable import of the MLPA is that Defendant Sprout's payment of the Purchase Price is a condition to the transfer of title to the Stephens Loan.

74.    Defendant Sprout's actions have caused Plaintiff FFF to suffer concrete damages that include the Purchase Price, as well as other costs and fees, including the interest payments

that must be made on loans upon which Plaintiff FFF relied to fund the Stephens Loan – all of which continues to grow.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FFF demands judgment in its favor and against Defendant Sprout, as follows:

(a)   On Counts I and II, for general damages and losses representing the difference between the agreed upon price for Plaintiff FFF'S sale and Defendant Sprout's purchase of the Loans and the price at which Plaintiff was forced to sell the Loans to a third-party in order to mitigate its damages, together with all other costs and expenses of carrying the Loans before Plaintiff FFF successfully sold them to a third-party, estimated to be in excess of $200,000;

(b)   On Count III, for the Purchase Price of the Stephens Loan as well as other costs and fees, including the interest payments that must be made on loans upon which Plaintiff FFF relied to fund the Stephens Loan;

(c)   On Count III, for the imposition of a constructive trust on the Stephens Loan for the benefit of Plaintiff FFF, pending Defendant Sprout's full and complete payment of the Purchase Price;

(d)   On all Counts, for reasonable attorneys' fees, pre and post-judgment interest, and costs of suit; and

(e)   for such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38 on all issues so triable.

Dated: New York
          May 27, 2022

OFFIT KURMAN, P.A.

By:_____
Daniel I. Goldberg
590 Madison Avenue, 6th Floor
New York, NY 10022
347-589-8542
*Attorneys for Plaintiff*